PEOPLE v. SALISBURY.

(Supreme Court, Appellate Division, Fourth Department. February 7, 1896.)

1. ADULTERATION OF MILK—EVIDENCE TO EXPLAIN ANALYSIS.
     In an action to recover the penalty for selling adulterated milk, brought under Laws 1893, c. 338, § 20, declaring that the term "adulterated milk" means milk containing more than a certain per cent. of fluids, defendant may show that there had been no physical interference with the milk since it was taken from the cows, though the chemical analysis shows that it contained an excess of fluids.

2. SAME—EFFECT OF ANALYSIS.
　　In such case, the jury have the right to 'disregard the analysis, if they find that it was not made from a fair sample of the milk sold.

Appeal from circuit court, Herkimer county.

Action by the people of the state of New York against John E. Salisbury to recover penalty, under Laws 1893, c. 338, for selling adulterated milk. From a judgment entered on a verdict in favor of defendant, and from an order denying a motion for a new trial, made on the minutes of the court, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles D. Thomas, for the People.
J. W. Rayhill, for respondent.

HARDIN, P. J. Plaintiff's complaint alleges that, on the 12th day of July, 1894, the defendant "supplied and brought, to be manufactured, to a cheese factory conducted by Henry Davis, situated and located in the town of Litchfield, Herkimer County, N. Y., adulterated milk,—milk containing more than eighty-eight per centum of water or fluids,—contrary to and in violation of" chapter 338 of the Laws of 1893. The complaint contained several counts, and demanded judgment against the defendant for a penalty of $100. Plaintiff relies upon subdivisions 1–3 of section 20 of the act, which are as follows:

"1. Milk containing more than eighty-eight per centum of water or fluids. 2. Milk containing less than twelve per centum of milk solids. 3. Milk containing less than three per centum of fats."

Upon the trial the plaintiff gave evidence that the defendant was a patron of the cheese factory conducted by Davis, and of the circumstances attending the delivery of milk on the 12th of July, 1894, by the defendant, at the said factory. Davis, the proprietor of the factory, detailed the circumstances attending the delivery of two cans of milk by the defendant, and he stated that, before any milk was taken out, the dipper was reached down in the milk, and given a stir around to mix it, when the samples were obtained for the purpose of analysis. Scrafford, an agent of the agricultural department, was present when the sample was secured, and he detailed the circumstances under which the same was obtained, and, after obtaining the samples, he states that he delivered them to Dr. Theodore Deecke, the chemist, and he also states the manner in which the milk was secured from the weigh can, and the delivery of the quantity thus secured to Dr. Deecke for analysis. Dr. Deecke was called as a witness for the people, and testifies to the results of his examination of the milk so delivered to him. He says that he found, from the first determination, that it contained 11.117 per cent. of solids and 88.883 per cent. of water, and that he repeated the operation the second time; and he adds:

"There is nothing absolutely correct, and so, also, a chemical analysis is not; and therefore I repeated the process. The second showed me 11.12 per cent. of solids and 88.88 per cent. of water. The third time I received 11.119

per cent. of solids and 88.881 per cent. of water. The fat was ascertained after the milk had been evaporated."

Section 6 of the chapter referred to provides, viz.:

"Every certificate duly signed and acknowledged, of a chemist, analyst or other expert employed by the commissioner of agriculture, or any analysis, examination or investigation made by such analyst, chemist or expert with respect to any matter or product which the commissioner has authority to examine or cause to be examined, shall be presumptive evidence of the facts therein stated."

After Dr. Deecke had given his testimony in chief as to his examination, he was extensively cross-examined; and it is not apparent that the judge, at the trial, improperly exercised his discretion in allowing the questions propounded to Dr. Deecke in the course of the cross-examination. It is apparent, from the testimony of Dr. Deecke, that the milk in question was found by him to be but slightly below the standard prescribed in the statute. The plaintiff also called George Davis, a son of the proprietor of the factory, who testified as to the circumstances attending the obtaining of the sample for examination. When the plaintiff rested, no motion for a nonsuit was made. The defendant was placed upon the stand as a witness, and he testified that the milk of the night of the 11th of July was put in one can in a wagon near the barn, and that the milk of the morning of the 12th of July was put into another can in the same wagon. A question was then propounded to him as follows:

"Q. From the milking of the milk on the 11th, at night, until the milking of the morning of the 12th, what did you do, if anything, with the milk in the can,—the night's milk?"

This question was objected to as incompetent, irrelevant, and immaterial, and the objections were overruled, and an exception taken by the plaintiff's counsel. The witness answered:

"Nothing, only what I have answered,—stirred up, and the cover put on."

We think no error was committed by the trial judge in receiving the answer to the question propounded. Other questions of somewhat similar purport were allowed to the defendant's witnesses, tending to show that there had been no physical interference with the milk after it was drawn from the animals. We think no error was committed in receiving such evidence, bearing upon the issue that was presented by the pleadings.

At the close of the evidence the learned trial judge determined that he would submit to the jury the question whether the sample was a fair one, and in the course of his charge he commented upon the evidence relating to that question; and at the close of his charge the defendant's counsel asked the court to charge "that if the jury find that the analysis was not made from a fair sample, then they have a right to disregard the analysis." In response to that the court observed: "I so charge. I have so charged in substance already." The plaintiff's counsel took an exception. We think the exception presents no error.

The principal question involved in the case seems to have been

considered by the late general term of the Fifth department in the case of People v. Hodnett, 68 Hun, 341, 22 N. Y. Supp. 809, and we find no occasion to apply to the case in hand a different principle from that laid down in the case to which reference has been made. The foregoing views lead us to the conclusion that the verdict should be sustained.

Order and judgment affirmed, with costs.     All concur.